UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>U.S. DEPARTMENT OF STATE FOIA<br>LITIGATION REGARDING EMAILS<br>OF CERTAIN FORMER OFFICIALS | Misc. No. 15-1188 (ESH) |

**JASON LEOPOLD'S OPPOSITION TO U.S. DEPARTMENT OF STATE'S MOTION
FOR APPOINTMENT OF COORDINATING JUDGE**

On September 2, 2015, the United States Department of State ("State"), filed a motion, purportedly pursuant to Local Civil Rules 40.5(e) and 40.6(a), requesting the "designation of a coordinating judge to allow the orderly and efficient resolution of common questions of law, fact, and procedure" in 32 Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, cases "in which the emails of certain former officials are at issue". State's Mot. at 1 [ECF dkt: 1]. Interested Party Jason Leopold ("Mr. Leopold") is a reporter for VICE News and is the plaintiff in two of the FOIA cases encompassed by State's motion for coordination, *Leopold v. Department of State*, 14-cv-1760 (TSC) and *Leopold v. Department of State*, 15-cv-123 (RC). State's motion for coordination is improper and will not serve the interests of justice or efficiency and should be denied.

**ARGUMENT**

**I.      There Are No Common Issues Of Law, Fact Or Procedure For Which
         Coordination Is Necessary Or Proper**

1.   State requests the "designation of a coordinating judge to allow the orderly and efficient resolution of common questions of law, fact, and procedure." State's Mot. at 1 [ECF dkt: 1]. However, there is currently no dispute about law pending in either of Mr. Leopold's

cases (14-cv-1760 and 15-cv-123).  Nor is there a dispute as to fact or procedure for which the parties have sought judicial resolution in either of Mr. Leopold's cases.

## II.     Coordination Is Unlikely To Improve The Efficient Disposition Of Cases

2.   State avers that transfer of common issues to a coordinating judge will allow for more efficient resolution of the cases.  State's Mot. at 10 [ECF dkt: 1].  However, both of Mr. Leopold's cases subject to the coordination motion are proceeding efficiently.

3.   A production schedule voluntarily entered into by the parties exists in 14-cv-1760.  There is currently no deadline under that agreement, or by order of the Court, by which State must search any of the emails that would be subject to coordination such that State would benefit in that case from the relief sought here.

4.   Similarly, there is currently no deadline in 15-cv-123 by which State must search any of the emails that would be subject to coordination such that State would benefit in that case from the relief sought here.

5.   Although 15-cv-123 will require searches of many of the emails that would be subject to coordination, a scheduling dispute is not a dispute of law, fact, or procedure.

6.   Additionally, State remains free to inform the judge in that case of any of its other production obligations and argue for a schedule reflecting those obligations as to these emails.  It remains unclear how substituting the currently presiding judge with a coordinating judge would alter anything other than the name of the judge who must consider State's cumulative production obligations.

7.   State also argues that coordination is appropriate because some plaintiffs have sought orders relating to preservation that seek the same or similar relief which may result in "conflicting rulings." State's Mot. at 14 [ECF dkt: 1].

8. Because Mr. Leopold is not one of those plaintiffs, coordination of his cases is not appropriate for this purpose.

9. Even were Mr. Leopold to file such a motion, the risk of "conflicting rulings" is a thinly veiled attempt to prevent having to preserve records in one case despite avoiding an obligation to preserve those same records in another. One judge's order to preserve a record that another judge declined to order preserved would not create incompatible obligations for State such that it would need to violate one order to comply with the other. As such, coordination on these issues is not necessary or helpful.

### III. Coordination Is Unlikely To Preserve Judicial Resources

10. State notes that district courts have authority to coordinate proceedings "in the service of judicial economy," State's Mot. p. 8 [ECF dkt: 1], and requests that a coordinating judge "occur immediately due to a number of scheduled conference [*sic*] and reports due in different cases". *Id*. at 14.

11. Granting State's motion and designating a coordinating judge immediately or otherwise will not remove State's obligation to appear at such conferences, file such reports, or otherwise prohibit any judge from ordering such things, which are well within a judge's authority and are common and appropriate methods of staying informed of each aspect of a case pending before that judge.

12. State asserts that "individual judges could benefit from the broader context that coordinated management could provide." State's Mot. p. 2 [ECF dkt: 1]. How a coordinating judge could provide "context" to another judge already familiar with the request(s) before her or him is unclear.

13. Further, it is likely any benefit which might be derived would be far outweighed by

the tremendous time commitment involved in coordinating briefing on 32 cases, and holding hearings at which counsel for each plaintiff would need to appear and present that plaintiff's arguments.  Contrary to State's assertions, the coordination sought would likely increase the burden on judicial resources as well as on each affected plaintiff.

    IV.    **Coordination Would Not Serve The Interests Of Justice**

14. State argues that district courts have the authority to coordinate proceedings "in the interest of justice".  State's Mot. at 8 [ECF dkt: 1].  However, State fails to demonstrate that justice will be served by the coordination proposed in its motion.

15. State alleges coordination will "take into account relevant demands on State, whose FOIA-processing resources are overextended". *Id*. at 2.  Even if it is true that State's FOIA-processing resources are overextended, it is entirely due to State's lack of planning and leadership over the course of many years despite ample notice that FOIA requests increased steadily for years.  State should not now be rewarded for its malfeasance by permitting the delays that would result from the need to brief a coordinating judge on issues already familiar to the judges presiding in each individual case.

    **A.  Increases in the number of FOIA requests is irrelevant to coordination.**

16. State asserts that coordination is justified because "divergent court requirements and deadlines" are "exacerbated by the fact that State's resources for processing FOIA requests are strained to the limit," because the number of FOIA request it has received has increased by more than 300% from fewer than 6,000 in FY 2008 to nearly 20,000 in FY 2014.  State's Mot. at 6 [ECF dkt: 1].  Not only is this cherry-picked figure misleading,[1] it is also irrelevant to the relief

---

[1] Analysis of the number of FOIA requests received by State in each of the last four fiscal years (FY 2011-2014) shows State was aware the number of FOIA requests was steadily increasing each year.  In FY 2011, State received

sought. An agency's burden may be relevant in other contexts such as an *Open America* stay, but it has no relevance to whether there exist legitimate disputes of law, fact or procedure, or to the preservation of judicial resources.

    **B.   State's FOIA office funding level is irrelevant to its coordination motion.**

17. Similarly, State asserts in its coordination motion that the "dramatic increase in workload has occurred while funding for State's operating account, which funds Department operations around the world, including the FOIA program, decreased in real terms." *Id*. State again confuses what facts may be relevant to a motion for an *Open America* stay with facts relevant to coordination.[2]

    **C.   State is culpable for any difficulties it may have meeting FOIA obligations.**

18. Predictable increases in FOIA requests coupled with decreased funding for the office responsible for responding to these requests is a damning indictment of State's leadership[3] as either incompetent or indifferent to its legal and moral obligations to provide information to the

---

14,298 new requests. (State's FOIA annual reports for all years discussed herein can be found at: https://foia.state.gov/Learn/Reports.aspx (Last visited September 12, 2015). Reports for some years contain notations explaining minor discrepancies in the reported numbers which are immaterial here.) In FY 2012, State received 18,521 new requests. In FY 2013, State received 18,753 new requests. In FY 2014, State received 19,625 new requests. As State's own data shows, the receipt of more FOIA requests in FY 2014 than in prior years is not an aberration for which State was unable to prepare.

    Additionally, it was widely expected since before the day Mrs. Clinton became Secretary of State on January 1, 2009 that she was likely to run for president in 2016. The logical result of an agency head seeking the presidency is that journalists like Mr. Leopold will seek records from that agency reflecting on the candidate's performance while in office. State should have anticipated many years ago that it would experience an increase in FOIA requests for records about Mrs. Clinton's tenure as Secretary of State, and planned accordingly. Yet apparently nothing was done at any time in the last six years to prepare for this highly foreseeable expense, and State now relies on its own failure to prepare as justification to delay complying with its obligations under FOIA.

[2] Should State actually move for an *Open America* stay, Mr. Leopold would have the opportunity to fully refute State's cherry-picked funding data.

[3] Mr. Leopold notes that as Secretary from January 21, 2009 through February 1, 2013, Mrs. Clinton was ultimately responsible for the performance of the Department of State, including its FOIA office, and records about her time at State may be effectively shielded from voters as a result of her own decisions as Secretary regarding funding for that office if State's motion is granted.

public about what the U.S. government does in the name of its people, at a time when those people are being asked to determine who should lead that government for the next four years.

19. In the face of such incompetence or indifference, journalists like Mr. Leopold have no other recourse but to seek assistance from the independent judiciary to hold federal agencies, like the U.S. Department of State, to its statutory obligations.

20. In this instance, the purpose and letter of FOIA are best served by permitting Mr. Leopold's cases to proceed without the delay and expense the sought after coordination would impose on him.

WHEREFORE, Mr. Leopold respectfully requests that the Court deny State's motion for designation of a coordinating judge with respect to the emails of certain former officials as it relates to his cases, 14-cv-1760 and 15-cv-123.

Dated: September 14, 2015                    Respectfully Submitted,

/s/ Ryan S. James_____
Ryan S. James
D.C. Bar #496272
5208 Capricorn Loop
Killeen, TX  76542
(254)289-7459
RSJameslaw@gmail.com

Jeffrey L. Light
D.C. Bar #485360
1712 Eye St., NW
Suite 915
Washington, DC 20006
(202)277-6213
Jeffrey@lawofficeofjeffreylight.com

*Counsel for Plaintiff*